UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL KOZBIEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 4145 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| SHERIFF OF COOK COUNTY, ) | |
| COOK COUNTY, ILLINOIS, ) | |
| CORRECTIONAL OFFICER ) | |
| FRANKLIN, and CORRECTIONAL ) | |
| OFFICER HUGHEY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Daniel Kozbiel ("Plaintiff") brings this action under 42 U.S.C. § 1983 against Thomas Dart, Sheriff of Cook County ("Dart"); Cook County, Illinois ("Cook County"); Correctional Officers Franklin and Hughey, first names unknown, ("Defendant Officers") (collectively "Defendants") alleging that they violated his Fourteenth Amendment rights by failing to protect him from an attack by another inmate while he was a pretrial detainee at Cook County Jail ("the Jail"). (R. 1, Compl. ¶¶ 1-4, 21.) Defendants move to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 11, Mot.) For the reasons set forth below, Defendants' motion to dismiss is denied.

## BACKGROUND

During June 2016, Plaintiff was a pretrial detainee at the Jail. (R. 1, Compl. ¶ 2.) On June 29, 2016, Plaintiff was assigned to a dormitory tier housing unit in which multiple detainees resided in one large room rather than separate cells. (*Id.* ¶¶ 6-7.) Jerome Lawrence ("Lawrence") was also being held at the Jail at that time and was designated a "maximum security" detainee.

(*Id.* ¶ 8.) Lawrence was facing serious charges including murder, home invasion, armed robbery; he had previously been convicted of multiple violent felonies and had previously escaped from a jail in another state. (*Id.* ¶ 9.) While designated as a "maximum security" detainee, Lawrence was assigned to the dormitory tier housing unit shared by Plaintiff, a non-violent detainee. (*Id.* ¶¶ 10-11.)

On June 29, 2016, Plaintiff witnessed Lawrence steal the property of another detainee in the dormitory tier unit. (*Id.* ¶ 13.) According to Plaintiff, Defendant Officers learned that Plaintiff had witnessed Lawrence's theft and, later that day, told Lawrence that Plaintiff had "snitched" on him. (*Id.* ¶ 15.) That night, while Plaintiff slept, Lawrence used another detainee's cane to "savagely" beat Plaintiff, causing him significant injuries that necessitated surgery and other treatment. (*Id.* ¶¶ 16, 20.) Plaintiff claims that the Jail had a policy requiring canes to be secured outside of the tier to prevent them from being used as weapons, but Defendant Officers failed to follow this policy on the date of the beating, allowing Lawrence to use the cane to cause Plaintiff's injuries. (*Id.* ¶¶ 17-18.)

## PROCEDURAL HISTORY

On June 14, 2018, Plaintiff filed this action under 42 U.S.C. § 1983 alleging that Defendants deprived him of his Fourteenth Amendment rights. (R. 1, Compl.) Plaintiff alleges that his injuries were caused by one or more of the following: (1) Dart's policy or practice of assigning dangerous detainees to dormitory tiers with non-violent detainees; (2) Defendant Officers' informing Lawrence that Plaintiff had "snitched" on him, thus provoking Lawrence to attack him; and/or (3) Defendant Officers' failure to secure the cane that Lawrence used to beat him. (*Id.* ¶¶ 21-22.) Although Plaintiff does not assert discrete claims in separately captioned counts, it appears that Plaintiff is asserting a claim of liability under *Monell v. Department of*

*Social Services of City of New York*, 436 U.S. 658 (1978), against Dart and the County, and a failure-to-protect claim against Defendant Officers. (*See id.*)

Defendants move to dismiss the action in its entirety. (R. 11, Mot.) They first argue that Plaintiff fails to state a *Monell* claim because Plaintiff's "cursory reference" to an alleged policy or practice of assigning dangerous detainees to a dormitory tier is not sufficient to state a claim under *Monell*. (*Id.* at 6.) Additionally, Defendants argue that Plaintiff fails to allege multiple instances of harm resulting either from the alleged policy or practice of housing "violent" and "non-violent" detainees together. (*Id.* at 8-9.) Defendants also argue that Plaintiff fails to state a claim against the Defendant Officers individually. (*Id.* at 9.) Defendants contend that Plaintiff fails to allege that he told Defendant Officers that he feared for his safety from Lawrence or any other detainee in the dormitory housing unit before the attack. (*Id.* at 11-12.) According to Defendants, this is fatal to Plaintiff's claim. (*Id.* at 12.) Defendants further argue that negligently permitting detainees to keep canes in the dormitory tier, although in violation of the Jail policy, does not support a claim of deliberate indifference. (*Id.* at 13-14.)

In response, Plaintiff argues that he sufficiently alleged a violation of his Fourteenth Amendment rights. (R. 16, Resp.) As to the *Monell* claim, Plaintiff argues that he need not allege other instances of harm resulting from the purportedly widespread housing policy to survive dismissal. (*Id.*) He further argues that he has adequately alleged a failure-to-protect claim based on the fact that Defendant Officers purposely put him at risk by telling Lawrence that Plaintiff had "snitched" on him, and then failed to follow Jail policy and secure a potentially dangerous weapon. (*Id.* at 9-11). The motion is now fully briefed.[1]

---

[1] The Court notes that Defendants were granted an opportunity to file a reply in support of their motion. (R. 15, Min. Entry.) However, no reply was ever filed.

3

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When deciding a motion to dismiss, the Court must accept all well-pled allegations as true, drawing all reasonable inferences in the light most favorable to the plaintiff. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018).

## ANALYSIS

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of inmates," *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984), and have a duty to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (citation and internal quotation marks omitted). Being physically assaulted in prison is "simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834 (citation and internal quotation marks omitted). Additionally, pretrial detainees are presumed to be innocent, and due process prohibits them from being "punished" in any fashion. *Miller v. Kienlen*, No. 14-CV-00031, 2017 WL 951342, at *7 (N.D. Ill. Mar. 10, 2017) (citation omitted). Claims of pretrial detainees arise under the Fourteenth Amendment rather than the Eighth Amendment, but there is "little practical difference between the two standards." *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001) (citation omitted).

I.  *Monell* **Claim**

To state a *Monell* claim, Plaintiff must "'plead[] factual content that allows the court to draw the reasonable inference' that the [municipality] maintained a policy, custom, or practice" that deprived him of his constitutional rights. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted). Here, Plaintiff alleges that his injury resulted from an inherently dangerous policy of assigning dangerous "maximum security" detainees to dormitory tiers where multiple detainees share one large room. (R. 1, Compl. ¶¶ 7, 8, 10.) He alleges that those meriting maximum-security classification prey on non-dangerous detainees, like Plaintiff, when housed in that fashion. (*Id.*) Plaintiff alleges that the policymakers at the Jail "turned a blind eye to the extreme and obvious risk" created by this housing practice. (*Id.* ¶ 12.)

In their motion, Defendants argue that Plaintiff's *Monell* claim fails because he does not describe other incidents where the housing policy caused injury. (R. 11, Mot. at 2-5.) The Court disagrees. The U.S. Court of Appeals for the Seventh Circuit has held that plaintiffs may adequately state a *Monell* claim based solely on their own experiences. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). Since the *White* decision, "courts analyzing *Monell* claims have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." *Brainer v. Dart*, No. 16 CV 6013, 2018 WL 1519154, at *7 (N.D. Ill. Mar. 28, 2018); *see also Brown v. Bryant*, No. 15 C 10445, 2018 WL 2201584, at *4 (N.D. Ill. May 14, 2018) ("Although Plaintiff has not alleged any other specific instances where the policy or practice caused constitutional violations, he need not do so in order to survive a motion to dismiss.").

*Brainer* is instructive. In that case, the court denied a motion to dismiss because the plaintiff successfully stated a *Monell* claim based solely on his own experience. *Brainer*, 2018

5

WL 1519154, at *7. In his complaint, the plaintiff alleged that as a pretrial detainee at the Jail, he was stabbed by another inmate. *Id.* at *1. The plaintiff filed a *Monell* claim alleging that the jail maintained a policy or practice that was deliberately indifferent to substantial risks of harm to the plaintiff posed by dangerous inmates. *Id.* at *6. The court reasoned that the plaintiff was only required to include allegations relating to his own incident to state a *Monell* claim because a "heightened pleading standard" did not apply to such claims. *Id.* at *7. Because the plaintiff outlined specific Jail practices that he claimed had caused his injuries, he successfully stated a *Monell* claim. *Id.*

Similarly, here, Plaintiff has alleged that the Jail maintained an inherently dangerous housing policy that led to his being attacked by a dangerous inmate. (R. 1, Compl. ¶¶ 7, 8, 10, 12, 21.) He need not allege other examples of injury resulting from the allegedly unconstitutional policy to survive dismissal. *See White*, 829 F.3d at 844; *Brainer*, 2018 WL 1519154, at *7. Defendants citation to cases predating *White* are unavailing. (*See* R. 11, Mot. at 5-7.) While Plaintiff must ultimately prove that an actual policy or widespread practice existed to prevail on his *Monell* claim, he need not do so at the pleading stage. *White*, 829 F.3d at 844; *see also Williams v. City of Chicago*, No. 16 CV 8271, 2017 WL 3169065, at *8-9 (N.D. Ill. July 26, 2017) ("[A]t the motion to dismiss stage, Plaintiff 'need only allege a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists[.]'" (citation and emphasis omitted)). Therefore, the motion is denied as to this claim.

## II. Failure-to Protection Claim

To state a failure-to-protect claim, the plaintiff must allege that (1) he faced a substantial risk of serious injury, and that (2) the defendant acted with deliberate indifference to that risk.

6

*Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). Because prisons are inherently dangerous places, it is not enough for the plaintiff to show that he was attacked by other inmates; the plaintiff must ultimately show that the defendants "had actual knowledge that he was at serious risk of being harmed." *Tidwell v. Hicks*, 791 F.3d 704, 708 (7th Cir. 2015).

Defendants argue that Plaintiff fails to state a claim against Defendant Officers because he does not allege "that he informed Officer Franklin or Officer Hughey that he was afraid of Lawrence" prior to the attack. (R. 11, Mot. at 11.) But in fact, Plaintiff alleges that Defendant Officers actually *caused* attack by telling Lawrence that Plaintiff had "snitched" on him, "knowing that their actions would result in harm to Plaintiff." (R. 1, Compl. ¶ 15.) As alleged in the complaint, Plaintiff would have had no reason to convey a fear of Lawrence because he did not know the officers told Lawrence he was a snitch. Not only did Defendant Officers put Plaintiff in harms' way by telling Lawrence that he had snitched on him, they then did nothing to warn him of any potential danger and instead left him to sleep in the same area as Lawrence. (R. 1, Compl. ¶¶ 16, 20.) The Court finds this sufficient to state a failure-to-protect claim. *See Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) ("Branding an inmate a snitch can expose him to serious harm[.]"); *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2009) ("[I]t's common knowledge that snitches face unique risks in prison[.]").

In addition, Plaintiff alleges that Defendant Officers compounded the situation by failing to remove the cane from the dormitory tier as required by Jail policy, thereby permitting Lawrence to attack him with it. (R. 1, Compl. ¶¶ 18-20.) Shortly thereafter, Plaintiff was brutally

beaten with the cane. (*Id.*) It is true that mere negligence does not give rise to a constitutional claim, *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016), but the "failure to enforce a policy . . . in conjunction with the knowledge of and disregard for an excessive risk to inmate health or safety . . . is actionable[.]" *Eichwedel v. Roth*, No. 91 C 3461, 1995 WL 66353, at *5 (N.D. Ill. Feb. 9, 1995); *see also Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992) (holding that detainee adequately stated failure-to-protect claim based on allegation that other detainees were given access to a "makeshift weapon" through the defendants' failure to inspect the cell as required by jail policy); *Goka v. Bobbitt*, 862 F.2d 646-648, 648 (7th Cir. 1988) (reversing summary judgment for prison guards where prisoner was struck in the eye by another inmate who was permitted to keep a broom in his holding cell in violation of jail policy, which could rise to the level of deliberate indifference).

The Court is unpersuaded by the numerous cases cited by Defendants that were decided at the summary judgment stage. (*See* R. 11, Mot. at 10-11.) Plaintiff need not prove that Defendants were deliberately indifferent at this stage, and, indeed, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact" that must be decided at later stages of the litigation. *Farmer*, 511 U.S. at 842. At this stage, Plaintiff need only allege a plausible claim. *Iqbal*, 556 U.S. at 678. His allegations satisfy that standard. Therefore, the motion is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 11) is DENIED. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and exhaust all efforts to settle the case. They shall appear for a status hearing on December 18, 2018, at 9:45 a.m.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: December 4, 2018**